The case this morning is In Re Medicis Pharmaceutical. Mr. Cullen. Good morning, your honor. May it please the court, my name is Fred Cullen and I'm here with Richard Tang. We are representing the Appellant Medicis Pharmaceutical Corporation. This case relates to a medicated rinse-off cleanser in which the composition consists of 5% sulfur, 10% sodium sulfosetamide. The cleanser composition has a pH of 6.5 to 8.1. What did the board do wrong? What did the board do wrong, your honor? Yes. The board, I submit, in affirming the rejection below, relied on assumptions by the examiner that are not prior art. There is no, I submit, there is no nexus to suggest that the mere fact that you have a medicated leave-on lotion where you find 5% sodium, 5% sulfur. Which one are you talking about now? Well, the references in general, there's no reference below, your honor, in which you find a cleanser formulation where you have the combined elements. Well, isn't Cetaphil a washable cleanser? Well, it's a good question. I think there's some ambiguity about Cetaphil. Cetaphil says in the head... I gather the PDR doesn't think there's any ambiguity about it. Well, I respectfully disagree to the extent... You disagree with me or the PDR? Well, I respectfully disagree with what the PDR says. Oh, okay. The PDR says Cetaphil lotion on the first line, then it says a cleanser below. But the PDO found it to be a cleanser. Now, unless there is no record evidence to support that whatsoever, we have to accept that it's a cleanser. Then why wouldn't a person of skill in the art raise the pH based on the Wurzel and Demling references? Well, if I could go back, the last paragraph of the Cetaphil reference talks about the way it would be applied. And basically you apply the Cetaphil lotion to the face, and it says that you remove the excess. So therefore, the bulk of the Cetaphil lotion is remaining on the face of the user, which is more aligned and in alignment with the prior art, the medicated leave-on lotions. It's not suggesting in the Cetaphil reference, regardless of whether they call it a cleanser or not, that you're removing it, you're washing it off, as you would do with a medicated rinse-off cleanser. How would you remove it before that, with a cloth? Well, in the existing prior art, with regard to the leave-on lotions, you left it on. With regard to a cleanser, you washed it off. The cleanser, you basically would wash it off. So the Cetaphil lotion, I just submit there's an ambiguity. I agree it says cleanser. It also says lotion. It says washable. Doesn't washable make it a cleanser? All this being somewhat irrelevant, how do we get around the PTO's finding that it's a cleanser? You see, we've got the finding, and then we've got things like washable that support the finding, and that kind of all makes it very difficult for this Court to question it. But with regard to the question, I believe that Judge Lager asked, the question would be, you may have asked, Your Honor, with regard to the pH. There's no pH teaching in the Cetaphil reference. So even if you do, for a point of argument, say it's a cleanser, you have to find the appropriate pH. You move to Wurzel. Then the person of skill in the art, according to the Board, would use Wurzel and Demling to raise the pH. But Wurzel, and you've seen in the briefing, Wurzel when it talks about the pH, and you look at this sub-reference Wurzel refers to, which is Demling, it really is talking about the pH of blood. It's not talking about the pH of skin. The pH of skin is 5.5. One skill in the art I would submit. If you're looking to put something on the face and the pH is 5.5, which is the pH of skin, there's no reason to go ahead and look at the Wurzel teaching and suggest the pH should be 7.1, 7.4. Well, but why wouldn't you be motivated to raise the pH just to make a better cleanser? It'll absorb faster. Well, that's not necessarily true. There's nothing in this record I submit that suggests even at the pH that's disclosed in Wurzel that it talks about maximum absorption. It doesn't talk about rate of absorption. You don't know that the active ingredients that are found in the prior art lotions, the sulfur and the sodium sulfosetamide, and the rate of absorption, that those would be taken up by the skin within a short period of time. That teaching's not there. Did you raise that argument below? I believe we did, Your Honor. But it certainly is, I do believe we did raise it before the board. But, I mean, so the connection I suggest to the court that's missing, there's no question that prior art medicated leave-on lotions have been around for years, 30-plus years before invention, and they had the sulfur, they had the sodium sulfosetamide. There's no disclosure in any of the prior art teachings of what the pH is or should be. If you look at sulfoset, you look at novoset in the PDR reference, which is part of the record. There's absolutely no suggestion of what the pH should be. Also interesting in those sulfoset and novoset references, there is a statement that the absorption of sodium sulfosetamide into intact skin is unknown. And I get back to the rate issue, is you do not know from the prior art that there is, that the sodium sulfosetamide and the sulfur can be used in a wash-off medicated cleanser. But you do know that it's going to increase your absorption, right? Well, you know at the pH... And Jemling tells you precisely that its studies are aimed at penetration into the skin. So higher absorption, penetration into the skin, why wouldn't one be motivated to modify Cetaphil to raise the absorption level? Well, Your Honor, but I respectfully disagree that Jemling does not talk about absorption into the skin. It's talking about absorption into blood. There's a difference, I suggest. But it expressly states that the studies examined are aimed at penetration into the skin, right? Not Jemling, Your Honor. And if you look at Wurtzel, Jemling is cited in a footnote in Wurtzel. But Jemling and Wurtzel, at least when they're talking about sodium sulfosetamide, they're talking about the physiological pH of, I think it's around 7.4. But when you read that reference, I suggest to the Court that it's not talking about the absorption of sodium sulfosetamide into intact skin. It's into plasma. No, the tests in Jemling were done on the skin. And Wurtzel, to quote from it, says, maximum absorption and minimum irritation are achieved with solutions of Cetera. So it's talking about increasing your absorption levels, reducing your irritation levels. Jemling is tests done on the skin. All of this seems to build up to a reason to use it to modify Cetaphil. If I go back to Wurtzel and I look at the appendix at A1372, on the right-hand column it discusses sodium sulfosetamide. That's where I read from. That's where you're reading from. And that's strictly talking about sodium sulfosetamide. There's no suggestion in that study that sulfur is being combined with it in the studies that are referred to here or in Jemling. And when you look at Jemling, Your Honor, Jemling is just talking about sodium sulfosetamide. Then he goes further in the Wurtzel argument, and Wurtzel does not use sodium sulfosetamide. You're right. There's no discussion of sulfur there. When he does use sulfur, he's using N-sulfenylylacetamide. And I respectfully suggest there is nothing in this record to suggest you can make the replacement into a medicated wash-off cleanser to basically replace the N-sulfenylylacetamide with sodium sulfosetamide. And if you take a look at the weight ranges that are being used by Wurtzel when he's using sulfur in a cleanser composition, it's a shampoo, he's using sulfur that is at the range of 3%, and he's using, which is certainly less than the 5% sulfur used in our invention. And then if you take a look at the N-sulfenylylacetamide, it's being used at the rate of 5% instead of 10%. So, yes, I do acknowledge that you do find in the prior art lotions, the leave-on lotions that are left on the face, that you have at least similar active ingredients, the sulfur and the sodium sulfosetamide. But I do suggest that there is a teaching of art, and I suggest that both the board and the examiner improperly made the leap without any teaching motivation suggestion in the art to go ahead and take the active ingredients that were in a prior art medicated lotion and put it into a rinse-off cleanser. The other thing I do not want to overlook, as set forth extensively in the patent specification itself, there are these formulations that are the subject of the invention here. In addition to the pH control, this composition has a reduced sulfur odor. And that's something that for Dr. Webster, who is one of our... Do you want to save some of your time, Mr. Coley? Yes, I do. Okay, thank you. We'll allow you to do that. Mr. McManus? May it please the Court. It appears from the Court's questions that the issue of whether Cetaphil is a cleanser seems reasonably settled. The reading that the board gave, the PDR reference, reasonably communicates that Cetaphil is a cleanser that can be used to deliver active pharmaceutical ingredients, specifically sodium sulfosetamide and sulfur. Where does the sulfur come from in your combination? Cetaphil doesn't mention sulfur. We don't know what its composition is. And Warsaw Demling don't mention sulfur. So you've got to combine three or four references to get where you want to go, don't you? Well, actually, Your Honor, first, the Cetaphil reference at A1357 does teach among its listed active ingredients for which it can be used to deliver topically, precipitated sulfur, which is sulfur, as used in a composition such as this. Second, the Novoset, Sulfoset, and Trice's Cicumat S lotion all have sulfur being delivered with sodium sulfosetamide. I don't think there's very much dispute that it was known in the art that one could use sodium sulfosetamide and sulfur to topically treat conditions like acne rosacea. I agree, but see, the thing that's bothering me here is that you've got to add sulfur, so you've got to have Trice, Sulfoset, and Novoset. You've got to modify Cetaphil to raise the pH. You've got to add Warsaw and Demling to get the pH up, but they don't have sodium. You've got to put together an awful lot of different references in order to get where you want to go. Doesn't that tend to suggest that when you're combining that much, you've got something inventive going on? Well, it can, Your Honor, but that's not the case we have here. If you look at Composition Claim 1, it's a cleanser that delivers sodium sulfosetamide and sulfur, and then the pH is added at the end. So you have four or five limitations. Cetaphil teaches the cleanser, sodium sulfosetamide, and sulfur. So what are you left with? You're left with the percentages of those active ingredients and the pH. The percentages all come from Sulfoset, Novoset, and Sicomat-S. Any one of those. Frankly, they're duplicative. They all teach a topical application with 10% and 5% sodium sulfosetamide. Okay, so now we've made one combination. We've had to combine Cetaphil with the trisulfosetamide, etc., but now you're not there yet. You're still going to have to make another jump to get to the pH. So you're kind of making my point. You're combining five, six, seven references? Really, it's three because tris, Novoset, and Sulfoset are really duplicative. I think it's three. Still, it's not one. Usually, when you have obviousness, you've combined two things in a rather routine way. When you start combining three, that suggests one of skill in the arts got to have an awful lot of understanding. Well, Your Honor, I submit to you that the evidence, or to the extent that the understanding needs to be there, it's here. And the understanding, what we're left with is the pH, right? Well, Wurzel and his predecessor, Doomley, to which he cites, teach advantages to using sodium sulfosetamide in solutions of a pH approaching neutrality. And the reason why that commends itself to one skill in the art here is if I want to make sure that I get enough sodium sulfosetamide into the skin in a removable cleanser, I want that advantage. I want sodium sulfosetamide because it has maximum penetration at a pH which falls within the sighted range. You're suggesting there are really only three elements to this thing. One is the cleanser, one is the sulfosetamide, and one is the pH. And all three of those are more or less common issues in the art that's involved in skin treatment and cleaning. Is that your argument? In essence, yes, Your Honor. The references all demonstrate it was known in the art that cleansers could be used to deliver active ingredients, that these particular active ingredients at these percentages were known to treat this condition, and it was known that at this pH it had a maximum penetration. So the only question is whether that's a truly inventive combination or whether one of ordinary skill in the art playing around with these ideas would say, oh, this might work. Well, exactly. The prima facie case being established, is there something that the thesis or menaces can show that renders the claim non-obvious? And here we don't have any evidence like that. The only thing that they proffered was Webster's statement that, I'm surprised enough sodium sulfosetamide gets into the skin. Cleansing the human skin is probably as old as the human species, and yet we're all the way up to the 21st century when somebody puts these things together. Why isn't that itself somewhat indicative of invention? Well, the mere passage of time, Your Honor, is not unto itself indicative of non-obvious. No, but when you have something that's such a universal need and such a compelling need, and it takes that long to find the perfect solution, even if all the ingredients have been around and understood for a long time, are you sure you've got this right? I am, Your Honor. Part of the reason, if we're going to attempt to explain why there is that gap, I mean, you have sulfoset, novoset, and trikes, who all teach a topical application using these active ingredients to treat this condition. So to say that there's this need for a product like that claimed in Medici's claim isn't quite accurate, with all due respect, because you do have compositions available to treat this kind of condition in the arm. Yes, but none quite like this one. It's slightly different, Your Honor, because it does impart that cleanser aspect, and immediately the three lotions that are cited are lotions. But the fact that they took something already known in the arm, which is to say Cetaphil, a cleanser to deliver these active ingredients, and did exactly what Cetaphil tells you to do, the fact that Cetaphil taught you to do that two decades ago doesn't entitle you to a patent. You don't get any deference from us, however, do you? We're free to make that judgment without deference to you? On the ultimate question of obviousness, it is a question of law, but as to the facts underlying that, particularly what the references teach, it is a question of fact, which so long as the substantial evidence standard is reasonable, this Court should accept those findings, as you discussed, Judge Rader. So here we have clear teaching that one on the ordinary skill in the art understood these components to be available to them. And one thing I did want to clarify, you discussed pH, which might be with opposing counsel. Dumoulin teaches the pH benefit of maximum absorption at a neutral pH, and that's what Wurtzel cites too. To be clear, Dumoulin teaches two studies. One is in plasma and one is on the skin. And the specific quotation that ends up in Wurtzel is from a plasma study. I did want to clarify that. Our brief, unfortunately, attributed this quotation at A1248 to the skin study by Strakos and Clark. That's not accurate. Strakos and Clark did conduct a skin penetration study using sodium sulfosetamide and found it to be the most penetrable, to give the best penetration. That conclusion is at A1249. To quote, in studies of penetration into the skin, Strakos and Clark found that sodium sulfosetamide gave greater penetration than any of the other sulfonamides, which is the general class into which this falls, tested. So Dumoulin— Your brief is incorrect. The quotation is correct. The source to which it is attributed is incorrect. Which raises the question, were you lying then or are you lying now? With all due respect, Your Honor, it was inadvertent. Actually, in our brief at page 32, we correctly identified the teaching from Strakos and Clark. So we do apologize for that. We wanted to make sure it was clear. It doesn't change the impact. The point here is those skilled in the art understood that at pH 7, neutrality, which falls squarely within the claim, you had this beneficial property of maximum penetration. That pH would have committed itself to one of our skilled in the art seeking to do exactly that, maximize the penetration. Are there any other questions? Thank you, Mr. McManus. Mr. Collin, you have remaining a little more than two minutes. I will make it very short, Your Honor, within the two minutes. I think really where the decision comes down to, you do have Wurtzel that talks about maximum absorption. And again, when maximum absorption does not mean, tells you nothing about the rate of absorption. Your Honor asked the question that up until the point of the invention in time, the prior compositions that contain these active ingredients, the sulfur and the sodium sulfosetamide, were leave on medicated lotions. They stayed on the face for certainly hours. What medicines came, really developed, was a cleanser composition. I don't think there's any dispute below that a cleanser composition, a medicated cleanser composition, is not intended to be left on the face for any extended period of time. It's intended to be washed off. And even if you go to Wurtzel, go to Demling, look at the pH, and this is maximum absorption around 7.4, it's telling me nothing about the penetration rate, which is critical. I suggest that we do have the declaration of Dr. Webster. He says that he does find the short-term application of the sulfur and sodium sulfosetamide onto the skin, washing it off quickly, he finds that to be unexpected, that you would have a beneficial result using these active ingredients and washing them off shortly after they're applied. There's nothing in the record below that suggests you can take these active ingredients, use the pH of 6.5 to 8.1, and put it onto the face, remove it, and have the beneficial results. Mr. Cullen, this really comes down to a question of what one of ordinary skill in the art would be able to do with these different knowledges, doesn't it? Correct, Your Honor. Now, what weight, if any, should we give to the fact that the PTO presumably has people closer to the skill in the art than we do, or at least than I do? Should we give any weight to that, or do you think we're free to think up our own skill in the art standard for a case like this? I believe there are, certainly in the Office of Enzyme Reset Arts, do have skill in the art, but the issue here is they've made an assumption. I suggest what it comes down to, there's nothing other than the examiner's assumption, when you see maximum penetration, to mean that will act very quickly, put on the skin, wash it off. It's in direct conflict with what exists in the prior for 30-plus years. The compositions, the sulfaset, the novaset, where there's nothing that tells you to take it off quickly. In fact, they want you to leave it on. Secondly, there's nothing in sulfaset, novaset, and the sica mat tells you about the pH. And I respectfully suggest that the office really has taken a collection of references, pulled what they need from each of the references to come up with our invention. I think I have your point. So I thank you for your time today and your attention, and I appreciate it. Thank you, Mr. Collard.